UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN B.,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

Case No. C18-5490-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting his testimony and assessing the medical opinion evidence.[1] (Dkt. # 11 at 1.) As a preliminary matter, the Court notes that the Commissioner's brief contains formatting irregularities, namely condensed spacing. (Dkt. # 15.) This spacing detracts from the readability of the document and in the future, counsel shall refrain from utilizing this feature or pleadings may be stricken.

---

[1] Plaintiff also assigns error to other findings at later steps in the ALJ's decision stemming from the two assignments of error listed here, and these other assignments of error need not be discussed separately. (Dkt. # 11 at 18.)

ORDER - 1

As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1967, has a high school diploma, and has worked as a construction day laborer and window warehouse laborer. AR at 40-42, 214. Plaintiff was last gainfully employed in December 2009. *Id*. at 213.

In July 2014, Plaintiff applied for benefits, alleging disability as of December 9, 2009. AR at 60-61, 189-97, 209-10. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 120-26, 132-46. After the ALJ conducted a hearing on November 16, 2016 (*id*. at 37-54), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-30.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff had not engaged in substantial gainful activity since January 30, 2013.

Step two: Plaintiff's cervical myeloradiculopathy, status post failed anterior cervical discectomy and fusion, headaches, degenerative disc disease of the lumbar spine, right femoral acetabular impingement, and chronic meniscal tear of the right knee are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity: Plaintiff can perform light work with additional limitations: he is limited to occasional overhead reaching bilaterally. He is limited to occasionally climbing ladders, scaffolds, ramps, and stairs, and crawling. He is limited to frequent balancing, stooping, kneeling, and crouching. He can never work around hazards such as unprotected heights or heavy operating machinery. He cannot operate a motor vehicle. He is precluded from working in extreme cold conditions, or with machinery causing vibrations.

Step four: Plaintiff cannot perform past relevant work.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

*Id*.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. *Id*. at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Discounting Plaintiff's Subjective Testimony

The ALJ discounted Plaintiff's subjective testimony because (1) his allegations were inconsistent with the medical evidence, which shows mostly normal functioning and improvement with treatment; (2) he made inconsistent statements about the efficacy of his treatment; (3) he alleged symptoms in his disability application that he did not report to his providers; and (4) Plaintiff's activities corroborate the objective testing showing that he retained full leg strength and could lift consistent with the light exertion level. AR at 26-27. Plaintiff argues that these reasons are not legally sufficient, and the Court will address them in turn.

*1.  Legal Standards*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See*

*also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## 2. *Medical Evidence*

Plaintiff first argues that because the ALJ erred in assessing the medical evidence, as argued in Plaintiff's opening brief, that error infected the ALJ's assessment of the inconsistency between the medical evidence and Plaintiff's subjective testimony. (Dkt. # 11 at 13.) But, as explained *infra*, Plaintiff does not establish error in the ALJ's assessment of the medical evidence, and thus this argument does not demonstrate error in the ALJ's assessment of Plaintiff's subjective testimony.

Plaintiff goes on to challenge the ALJ's summary of the medical evidence, arguing that the ALJ's finding that this evidence was consistent with the RFC assessment is not a "convincing reason[] to reject [Plaintiff's] testimony describing the actual functional effects of his symptoms." (Dkt. # 11 at 13 (citing AR at 26).) Plaintiff is mistaken, because the ALJ detailed how the medical evidence indicates that he can perform light work with additional restrictions, which is inconsistent with his allegation of disability. Such a finding is indeed a valid reason to discount Plaintiff's allegations. *See* Social Security Ruling 16-3p, 2017 WL 5180304, at *5 (Oct.

25, 2017) ("A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.").

Plaintiff also challenges the ALJ's assessment of his testimony regarding headaches. He asserts that his headaches cause greater limitations than accounted for in the ALJ's RFC assessment, and that the ALJ did not discount his allegations about his headaches for legally sufficient reasons. (Dkt. # 11 at 13.) But the ALJ found that that the record did not support headaches at the frequency Plaintiff claimed to experience them (AR at 24) and that the headaches improved with treatment (*id*. at 25). Those are legally sufficient reasons to discount Plaintiff's subjective headache allegations. *See Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006) ("Because Greger did not report any fatigue to his doctors during the relevant period, the ALJ properly limited the hypothetical to the medical assumptions supported by substantial evidence in the record."); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

Plaintiff makes several other unpersuasive arguments. He notes that the ALJ acknowledged a worsening of his symptoms in the months preceding his surgeries, and argues that this is not a reason to discount his testimony about the symptoms that persisted after surgery. (Dkt. # 11 at 14.) The ALJ did not cite this evidence as a reason to discount his testimony about the symptoms that persisted after surgery, however; he noted those periods of exacerbation to acknowledge that Plaintiff's symptoms did flare at times, but those periods were not long enough to satisfy the durational requirement for disability. AR at 26.

Plaintiff also argues that the ALJ's finding of improvement with treatment is not a reason

to discount Plaintiff's testimony about the pain that persisted even with treatment, but again, the ALJ did not cite evidence of improvement as a reason to discount Plaintiff's testimony regarding the residual pain. The ALJ acknowledged that Plaintiff continued to experience some pain, which is why his RFC assessment included pain-related limitations. *Id*. at 26.

Because Plaintiff's challenges to the ALJ's interpretation of the medical evidence are not persuasive, he has not met his burden to show that the ALJ erred in relying on medical evidence to discount Plaintiff's allegations.

### 3. Other Inconsistencies

Plaintiff argues that the ALJ erred in finding his reports regarding the efficacy of epidural steroid injections to be inconsistent, because there is some evidence that he experienced relief from those injections early on, but the injections became less effective with time. (Dkt. # 11 at 14.) Thus, according to Plaintiff, the ALJ erred in discounting his allegations based on inconsistency between his hearing testimony that injections and earlier reports of improvement, because both statements were accurate. (*Id*.) As support for this argument, Plaintiff cites a February 2016 physical therapy note indicating that Plaintiff reported that his injections in his lower back had become less effective. (*Id*. (citing AR at 709).) But there are many reports of effective injections in the record, including as recently as January 2016, which supports the ALJ's finding, even if the most recent injection mentioned in the record was not effective. *See* AR at 495-96 (August 2013 note), 509 (March 2014 note), 515 (April 2014), 523 (August 2014 note), 596-97 (April 2015 note), 871 (January 2016 note). This evidence is inconsistent with Plaintiff's testimony at the hearing that only his first injection worked, but subsequent injections were not helpful. *Id*. at 53. The ALJ did not err in discounting Plaintiff's testimony in light of this inconsistency. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th

Cir. 1999) (contrary to plaintiff's claims of lack of improvement, physician reported symptoms improved with use of medication).

Plaintiff also challenges the ALJ's finding that the record did not support his testimony regarding frequent headaches. Plaintiff contends that the ALJ erred in comparing a December 2014 note describing headaches once or twice monthly with his hearing testimony that he had headaches on a near-daily basis. *See* AR at 24 (referencing *id*. at 43, 539). But this was not the only headache-related evidence the ALJ cited: the ALJ noted that Plaintiff reported significant improvement of headaches with treatment at various times (*id*. at 22 (citing *id*. at 356, 384), 25 (citing *id*. at 659)). Plaintiff has not cited any evidence corroborating his testimony regarding "almost daily" headaches, and thus has not shown that the ALJ erred in finding that testimony to be unsupported by the record.

Plaintiff also contends that even if the record does not corroborate his reports of a need to frequently lie down during the day (as found by the ALJ (*id*. at 27)), he could have reported that symptom to his providers and they did not record it. (Dkt. # 11 at 15.) The Court declines Plaintiff's invitation to speculate about what was omitted from Plaintiff's medical record; such speculation does not amount to evidence establishing error.

Plaintiff next argues that although the ALJ emphasized that Plaintiff consistently had full strength in his legs (AR at 27), this finding "does not prove that he was not experiencing pain." (Dkt. # 11 at 15.) But the ALJ did not cite this finding as evidence that Plaintiff was not experiencing pain; the ALJ cited those results as consistent with Plaintiff's reported activities, namely regular exercise, fishing, gardening, yard work, walking, and biking. AR at 27. The ALJ acknowledged Plaintiff's pain, but found that it would not preclude all work activities. *Id*. at 26.

Plaintiff goes on to argue that the ALJ erred in emphasizing that Plaintiff reported that he

could lift 20 or 25 pounds, without also acknowledging that he reported pain with doing dishes, carrying a gallon of milk, or shopping. (Dkt. # 11 at 15 (citing AR at 709).) The totality of the note suggests that improving Plaintiff's body mechanics would help him complete those household activities without pain. AR at 708. In any event, the theory of Plaintiff's alleged error is not entirely clear: the ALJ cited Plaintiff's self-reported ability to lift up to 25 pounds as consistent with the lifting restrictions of light work, and Plaintiff's reference to pain with various activities does not necessarily contradict his statement that he can lift up to 25 pounds without pain. *Id*. at 27, 709.

Lastly, Plaintiff argues that the ALJ erred in failing to acknowledge that a January 2013 MRI revealed "narrowing in the right lateral recess which may impinge on the descending right S1 nerve root." (Dkt. # 11 at 15 (citing AR at 447-48).) Plaintiff has failed to explain how the ALJ's failure to discuss this finding is erroneous, because the ALJ is not required to comprehensively summarize every piece of evidence in the record.

Plaintiff concludes by summarizing many of his subjective allegations at length. (Dkt. # 11 at 15-17.) Plaintiff has failed to connect that summary with a specific identification of error. Because Plaintiff has not shown that the ALJ's assessment of his allegations contains error, the Court will not disturb the ALJ's findings.

**B.     The ALJ Did Not Err in Assessing the Medical Opinion Evidence**

Plaintiff assigns error to the ALJ's discounting of two opinions, and crediting of the State agency opinions, each of which the Court will address in turn.[4]

//

---

[4] Plaintiff's opening brief summarizes the medical evidence at length, but fails to connect that summary to identification of an error in the ALJ's decision. (Dkt. # 11 at 2-10.)

*1.    Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

//

2.  *Bernard Stupski, M.D.*

Dr. Stupski, Plaintiff's primary care physician, completed a DSHS form opinion in April 2015 indicating that Plaintiff was limited to sedentary work, and at the same time authorized him for a six-month disabled parking pass. AR at 720-24. In March 2016, Dr. Stupski completed the same form again, also indicating that Plaintiff could perform sedentary work. *Id*. at 810-12. In both forms, Dr. Stupski left blank the sections that asked him to identify the objective results that supported his conclusions. *Id*. at 721, 811.

The ALJ gave "little weight" to Dr. Stupski's opinions, for the following reasons:

> To begin, they are brief and conclusory, they are supported by no analysis or citation to the record, and they are inconsistent with the claimant's own reports about what he is able to lift and carry. They are also inconsistent with exam findings sh[ow]ing the claimant's strength is grossly intact in the upper and lower extremities. They are also inconsistent with the claimant's report in September 2016 that he had been walking and riding his bike 50 miles a week until recently. [AR at 885].

*Id*. at 28. Plaintiff argues that these reasons are not legally sufficient.

Plaintiff contends that Dr. Stupski's opinions are consistent with his treatment notes, showing tenderness, reduced range of motion, and 4+/5 strength in his left leg with extension. (Dkt. # 11 at 11.) This argument is not persuasive: the findings cited by Plaintiff are not particularly severe and do not conclusively suggest that he is limited to sedentary work. There are indeed some abnormal findings in the treatment record, but they do not necessarily indicate that Plaintiff is restricted to sedentary work; the record contains many references to Plaintiff retaining the ability to walk long distances and lift up to 20 or 25 pounds. *See, e.g.*, AR at 249, 579, 607, 709. Plaintiff has not shown that the ALJ erred in finding the record to be inconsistent with Dr. Stupski's conclusions.

1    Plaintiff also argues that the test results cited by the ALJ showing that his strength was "grossly intact" in his arms and legs do not prove that he can perform light work. (Dkt. # 11 at 11.) But the ALJ did not cite those findings as evidence that Plaintiff can perform light work; he cited them as evidence contradicting Dr. Stupski's conclusion that Plaintiff can lift 10 pounds maximum. AR at 28. This is a reasonable reading of the record.

Lastly, Plaintiff argues that the ALJ erred in characterizing a September 2016 treatment note (*id*. at 885) as indicating that Plaintiff had been "walking and riding his bike 50 miles a week until recently[,]" because the treatment note actually does not indicate when he was engaging in those activities. (Dkt. # 11 at 11.) The record as a whole indicates that Plaintiff was able to walk longer distances at other times during the adjudicated period. *See, e.g.*, AR at 579, 607, 709. As recently as February 2016, Plaintiff reported that he was currently walking "a lot as he always has." *Id*. at 709. Although the note cited by the ALJ does not indicate specifically how recently Plaintiff was able to walk and ride his bike 50 miles, it is reasonable to characterize the timeframe as "recently" because Plaintiff was referring to that activity as a point of comparison. If he had engaged in that activity many years before, it would not have served to illustrate how Plaintiff's pain had increased since his last medical visit. *Id*. at 885. Thus, the ALJ's interpretation of the September 2016 treatment note is reasonable and supports the ALJ's assessment of Dr. Stupski's opinions.

Because the ALJ reasonably found Dr. Stupski's opinions to be conclusory and inconsistent with the record in multiple ways, the ALJ did not err in discounting Dr. Stupski's opinions on those bases. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir.

1999) (holding that an ALJ may properly reject an opinion that is conclusory and inconsistent with the record).

### 3. *Brent Packer, M.D.*

Dr. Packer reviewed Plaintiff's 2012-2016 records for DSHS, and completed a form in March 2016 finding that Plaintiff's condition met or equaled a listing during that time and that he could not perform sedentary work. AR at 813-14. The ALJ found Dr. Packer's opinion to be brief and conclusory, and inconsistent with the record, namely Plaintiff's self-reported ability to lift 20-25 pounds and drive, and the many records showing intact strength, intact hand strength, and generally normal gait (aside from the brief period when Plaintiff injured his knee and required knee surgery). *Id*. at 28.

Plaintiff argues the ALJ erred in discounting Dr. Packer's opinion based on his activities, because lifting more than 25 pounds aggravated his pain and his ability to drive does not prove that he can work, and neither does intact strength. (Dkt. # 11 at 12.) Plaintiff misses the ALJ's point: testing showing intact hand strength and generally normal gait, along with Plaintiff's self-reported lifting and driving abilities, contradict Dr. Packer's description of Plaintiff's limitations. Whether those abilities prove that Plaintiff can work is not relevant, because Plaintiff has the burden of proof at this step. These inconsistencies are a legitimate reason to discount Dr. Packer's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

### 4. *State Agency Opinions*

The ALJ gave great weight to the State agency reviewing consultants' opinions. AR at 27. Plaintiff argues that the ALJ erred in failing to consider whether the consultants reviewed all of the relevant evidence, and suggests that they did not, because their review predated the end of

the adjudicated period. (Dkt. # 11 at 12.) It is true that the consultants did not have access to evidence not in the file at the time of their review, but the ALJ explicitly discussed the evidence available to the consultants at each level of State agency review, and expressly found the opinions to be consistent with the overall record, which the ALJ reviewed. AR at 27. The ALJ did not err in crediting non-examining physician opinions that he reasonably found to be consistent with the overall record, because "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews*, 53 F.3d at 1041 (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original)).

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 29th day of April, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge